# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF WILLIAM TURNER, *by and through successors in interest, William Turner Jr. and Vanessa Bowler*, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | Case No. 1:25-cv-01551-JLT-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS' MOTION TO DISMISS<br><br>(ECF No. 19)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Pending before the Court is a motion to dismiss filed by Defendants California Department of Corrections and Rehabilitation ("CDCR"), Jeffrey Macomber, Diane Toche, Ronald Broomfield, Amar Mehta, M.D., Bryan Phillips, and Clarence Cryer Jr. The Court held a hearing on the matter on April 8, 2026. Counsel Mohammed Aly and Kevin O'Hara appeared on behalf of Plaintiffs, and counsel Ryan Zalesny appeared on behalf of Defendants. Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Defendants' motion to dismiss with leave to amend.

/ / /

/ / /

/ / /

## I.

## BACKGROUND

Plaintiff Estate of William Turner brings this action through successors-in-interest William Turner Jr., a minor, by and through guardian ad litem Nasheicka Patrick, and Vanessa Bowler, a minor, by a through guardian ad litem Charlene Bottom.  (ECF No. 16 "FAC", ¶ 21.) Plaintiffs bring the instant wrongful death and civil rights action against CDCR and several of its employees in relation to the death of William Turner ("decedent") while in CDCR custody.

Defendant CDCR is a California State agency that is responsible for the operation of the California State prison and parole systems, including the Substance Abuse Treatment Facility and State Prison at Corcoran ("SATF") where decedent died.[1]  (Id. at ¶ 25.)  Defendant Jeff Macomber ("Macomber") was the Secretary for CDCR, which is the highest-level official in CDCR and was responsible for administering and overseeing operations at CDCR, including management, safety, and security of CDCR inmates and staff.  (Id. at ¶ 26.)  Defendant Diana Toche ("Toche") is the Undersecretary of Health Care Services for CDCR and is responsible for the day-to-day administration of all health care services for the thirty-three CDCR adult prison facilities, including implementing policies, procedures, and practices relating to mental health care services.  (Id. at ¶ 27.)  Defendant Ronald Broomfield ("Broomfield") was the Director of the Division of Adult Institutions for CDCR and was responsible for supervising the day-to-day administration for the thirty-three CDCR adult prison facilities, including overseeing and implementing policies, procedures, and practices related to operations.  (Id. at ¶ 28.)  Defendant Amar Mehta is the Deputy Director of the Statewide Mental Health Program for CDCR who is responsible for overseeing provision of mental health care and substance abuse treatment and prevention in CDCR, promulgating and implementing police and procedures, supervision of practices, and taking corrective action when necessary to ensure provision of constitutionally adequate care.  (Id. at ¶ 29.)  Defendant Bryan Phillips ("Phillips") is the Warden for SATF, who is in charge of oversight of operations at SATF.  (Id. at ¶ 30.)  Defendant Clarence Cryer Jr.

[1] Plaintiffs refer to the facility as "California State Prison Corcoran—Substance Abuse Treatment Facility"; however, for clarity, the Court will use the facility's official name.

("Cryer Jr.") is the Health Care Chief Executive Office for SATF and has hiring authority for all health care staff.  (Id. at ¶ 31.)  Cryer is also in charge of hiring, promotion, training, and supervision of health care staff at SATF.  (Id.)  Defendant Doe 1 was a Watch Commander at SATF, one of the highest-level supervisory positions, and was responsible for assisting with oversight and administration of the SATF, including ensuring the safety of the inmates housed.  (Id. at ¶ 34.)  Defendant Doe 2 was a Sergeant at CDCR, who was responsible for assisting with oversight and administration of the SATF, including the safety of the inmates housed.  (Id. at ¶ 35.)  Defendant Doe 3 was a Correctional Officer responsible for monitoring and supervising inmates at SATF and was assigned to the housing module where decedent was housed at the time of his death.  (Id. at ¶ 36.)  Defendant Doe 4 was a Psychiatric Technician at CDCR who was responsible for providing competent medical care, mental health care, treatment, and follow-up care to decedent.  (Id. at ¶ 37.)  Defendant Doe 5 was a Licensed Vocational Nurse at CDCR who was responsible for providing competent medical care, treatment, and follow-up care to decedent.  (Id. at ¶ 38.)  Defendants Does 6 through 10 are additional employees at CDCR, including correctional officers, civilian staff, and medical and mental health professionals.  (Id. at ¶ 39.)

Decedent initially entered the CDCR system on or around late 2014.  (Id. at ¶ 57.)  Prior to his imprisonment, decedent had a documented history of health issues, including acid reflux, asthma, headaches, renal insufficiency, and low back pain.  (Id. at ¶¶ 57, 60.)  He was also a mentally disabled individual within the developmental disability program/disability placement plan.  (Id. at ¶¶ 4, 58.)  Throughout his incarceration, decedent had regular contact with health and mental health staff.  (Id. at ¶ 59.)

At the time of decedent's incarceration, CDCR was operating under continuing federal oversight stemming from the class action Coleman v. Wilson, No. 2:90-cv-00520-KJM-DB, ECF No. 1, Complaint (E.D. Cal. Apr. 23, 1990), in which the court determined that CDCR failed to provide constitutionally adequate mental health care in violation of the Eighth Amendment.  (Id. at ¶¶ 45-46.)  The Coleman Court appointed a Special Master to monitor CDCR's compliance with those orders and issue regular reports with findings and recommendations.  (Id. at ¶¶ 47-

3

48.)  In 2022, the Coleman Special Master issued suicide prevention recommendations based on conditions in 2021 and 2022 at twenty-three CDCR facilities, including SATF.  (Id. at ¶ 52.) The Special Master stated that SATF's compliance with "Observation Status" was inconsistent, as observation occurred every thirty minutes despite the Program Guide's requirement of observation every fifteen or fewer minutes.  (Id.)  In 2023, the Coleman Court adopted the Special Master's 2022 suicide prevention recommendations and ordered Defendants to implement them.  (Id. at ¶ 53.)

As of November 13, 2023 and November 14, 2023, decedent was housed in SATF.  (Id. at ¶ 56.)  SATF maintained a culture of drug abuse driven by the proliferation of contraband. (Id. at ¶ 65.)  The autopsy report reflects that decedent died on November 14, 2023, at 12:24 a.m. due to toxic ingestion of cocaine.  (Id. at ¶ 5.)  Decedent had no history of drug use prior to incarceration.  (Id. at ¶ 4.)  Decedent was one of at least eighty-nine deaths by overdose within CDCR's thirty-three correctional facilities for the 2023 calendar year.  (Id. at ¶ 11.)

Plaintiffs commenced this action on November 12, 2025.  (ECF No. 1.)  On February 17, 2026, Plaintiffs filed their amended complaint, bringing eight causes of action: 1) Deliberate Indifference to Serious Mental Health Needs; 2) Failure to Protect from Harm; 3) Deprivation of the Right to Familial Relationship with Decedent; 4) Supervisory Liability Causing Constitutional Violations; 5) Wrongful Death; 6) Negligence; 7) Failure to Provide Medical Care; and 8) Violation of the Americans with Disabilities Act.  (FAC at pp. 21-33.)  On March 3, 2026, Defendants filed the instant motion to dismiss, and Plaintiffs filed their opposition on March 17, 2026.[2]  (ECF Nos. 19, 20.)  The assigned District Judge referred the motion to the undersigned for the preparation of findings and recommendations (ECF No. 21), and the Court heard argument on April 8, 2026.  (ECF No. 27.)

/ / /

/ / /

/ / /

---

[2] The Court observes, and the parties briefly discussed at the hearing, that they did not engage in a meet-and-confer.

4

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  The pleading standard under Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true.  Id. at 678.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

In deciding whether a complaint states a claim, the Ninth Circuit has discussed that two principles apply.  First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief.  Id.  "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988)).

/ / /

/ / /

## III.

## DISCUSSION

### A. Claims Brought Through 42 U.S.C. § 1983

### 1. Deliberate Indifference to Serious Mental Health Needs

Plaintiffs claim that Defendants Macomber, Toche, Broomfield, Mehta, Phillips, Cryer Jr., and Does 1-10 were deliberately indifferent to serious mental health needs in violation of the Eight Amendment. (FAC ¶¶ 79-94.) Defendants begin by arguing that Plaintiffs have failed to state a claim of deliberate indifference. (ECF No. 19, pp. 17-22.) Specifically, Defendants contend that Plaintiffs have not alleged sufficient facts to establish that Defendants consciously disregarded a substantial risk of serious harm to decedent. (Id.) Plaintiffs respond that Defendants were aware of the orders issued in Coleman and that decedent's death could have been avoided with proper supervision and timely, adequate medical intervention. (ECF No. 20, p. 9.) Even construing the allegations in the complaint in the light most favorable to Plaintiffs, the Court nonetheless agrees with Defendants.

While the Eighth Amendment of the United States Constitution entitles an inmate to medical care, the Eighth Amendment is violated only when a prison official subjectively acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Under the subjective deliberate indifference standard, "a prison official will be liable for disregarding an inmate's serious medical needs only if he was both 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and actually 'dr[e]w the inference.'" Sandoval v. Cnty. of San Diego, 985 F.3d 657, 667-68 (9th Cir. 2021) (quoting Peralta, 744 F.3d at 1086). In contrast, "a prison official who 'should have been aware' of a medically related risk to an inmate, but in fact was not, 'has not violated the Eighth Amendment, no matter how severe the risk.'" Id. at 668 (quoting Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002)), overruled on other grounds, Castro v. Cnty. of Los Angeles, 833 F.3d 1060 (9th Cir 2016)). Mere negligence is insufficient for Eighth Amendment liability. Estelle v.

Gamble, 429 U.S. 97, 106 (1976).

"A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain."  Peralta, 744 F.3d at 1081 (citation and internal quotation marks omitted).  "Indications that a plaintiff has a serious medical need include [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation and internal quotation omitted).

Here, although Plaintiffs contend that decedent's death could have been avoided with proper supervision and timely medical intervention, these allegations do not establish that any Defendant was actually aware of, and consciously disregarded, a substantial risk of serious harm to decedent.  Absent from the complaint are specific, factual allegations as to what each individual Defendant did and how their failure to act caused harm to decedent.  Plaintiffs' theory rests largely on the assertion that Defendants *should* have known of Plaintiff's deteriorating mental health and *should* have acted differently, which is insufficient to state a claim for deliberate indifference.

Plaintiff's reliance on the orders issued in Coleman is similarly unavailing.  While such orders may reflect broader systemic concerns, generalized allegations of institutional deficiencies do not establish that any Defendant had the requisite subjective awareness of a substantial risk of harm to decedent in this case.  See, e.g., Est. of Olivo v. Cal. Dep't of Corr. & Rehab., No. 24-cv-896 W (MMP), 2025 WL 3510911, at *5 (S.D. Cal. July 9, 2025) ("[T]o show deliberate indifference, Plaintiffs must be able to point to specific issues Coleman identified and tie those similarities to the facts of their case"); see also Roberts v. Cate, No. 2:08-cv-2624-JAM-KLN-P, 2013 WL 268709, at *12 (E.D. Cal. Jan. 22, 2013) (finding that a defendant's knowledge of deficiencies addressed in Coleman was "too generalized to impute knowledge" of specific deficiencies at a state prison.)

Accordingly, Plaintiffs have failed to state a claim for deliberate indifference, and the Court recommends granting Defendants' motion to dismiss this claim.

### 2. Failure to Protect From Harm

Plaintiffs claim that Defendants Macomber, Toche, Broomfield, Mehta, Phillips, Cryer Jr., and Does 1-10 failed to protect decedent from serious harm in violation of the Eight Amendment. (FAC ¶¶ 95-108.) To establish a failure to protect claim under the Eight Amendment, a plaintiff must allege that prison officials acted with deliberate indifference to the threat of serious harm. Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013). Because Plaintiffs' failure to protect claim is based on the same alleged conduct and is governed by the same deliberate indifference standard analyzed above, the Court does not repeat that analysis here. For the reasons set forth above, the Court recommends that Defendants' motion to dismiss this claim be granted.

### 3. Deprivation of the Right to Familial Relations with Decedent

Plaintiffs claim that Defendants Macomber, Toche, Broomfield, Mehta, Phillips, Cryer Jr., and Does 1-10 deprived them of their Fourteenth Amendment liberty interests in the parent-child relationship through deliberate indifference to decedent's mental health and health care needs, substance abuse prevention and treatment needs, health, and safety. (FAC ¶¶ 109-112.)

"Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1075 (9th Cir. 2013). "[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation." Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008). "Conduct which was not intentional, but rather deliberately indifferent, may rise to the conscience-shocking level in some instances" that would state a claim for loss of familiar relations. See Muniz v. Pfeiffer, No. 1:19-cv-00233-JLT-CDB (PC), 2023 WL 184481, at *9 (E.D. Cal. Jan. 13, 2023) (citing Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)), adopted, 2023 WL 2413822 (E.D. Cal. Mar. 8, 2023).

The Court has previously found that Plaintiffs failed to state claims for deliberate indifference to serious mental health needs and for failure to protect. Because Plaintiffs' Fourteenth Amendment loss of familial relations is premised on a finding of deliberate

indifference to those claims, the Court recommends granting Defendants' motion to dismiss this claim.

### 4. Supervisory Liability

Plaintiffs claim that Defendants Macomber, Toche, Broomfield, Mehta, Phillips, Cryer Jr., and Does 1-5 had a duty to hire, supervise, and train employees and/or agents, and that they breached that duty through negligent hiring, supervision, training, and disciplining their employees and/or agents, causing harm to decedent. (FAC ¶¶ 113-117.) Defendants argue that Plaintiffs fail to allege that they personally participated in decedent's overdose or were aware of any subordinate's unconstitutional actions, and that Plaintiffs do not identify how any alleged failure to train, supervise, or discipline any subordinate caused decedent's overdose. (ECF No. 19, pp. 23-25.) In response, Plaintiffs provide a brief argument that they have adequately alleged Defendants' liability. (ECF No. 20, pp. 12-13.) The Court agrees with Defendants.

"Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (quoting Hansen, 885 F.2d at 646). Allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." Felarca v. Birgeneau, 891 F.3d 809, 820 (9th Cir. 2018) (quoting Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Starr, 652

F.3d at 1208 (quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998)). Additionally, supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy 'itself is a repudiation of the constitutional rights' and is 'the moving force of the constitutional violation.'" Crowley, 734 F.3d at 977 (quoting Hansen, 885 F.2d at 646).

Here, Plaintiffs' allegations are insufficient to state a claim for supervisory liability under Section 1983.  Plaintiffs allege that Defendant Phillips allowed his subordinates to violate mandatory state regulations with respect to medical care and welfare checks.  (FAC ¶ 74.) Plaintiffs further allege that CDCR officials were aware that policies and procedures relating to substance abuse prevention, mental health treatment, and suicide prevention were inadequate, and that Defendants failed to provide sufficient oversight and training or ensure implementation of those policies.  (Id. at ¶¶ 14, 55, 62, 63.)  Plaintiffs also allege the existence of a culture of drug abuse within SATF to which Defendants allegedly "turned a blind eye."  (Id. at ¶¶ 65-66.)  However, these allegations are largely conclusory and do not include specific facts demonstrating how any individual Defendant personally participated in, directed, or knowingly acquiesced to a constitutional deprivation.  Nor do Plaintiffs allege specific facts plausibly linking Defendants' purported failures in hiring, supervising, training, or disciplining to a specific constitutional deprivation.  Accordingly, Plaintiffs have failed to state a claim for supervisory liability, and the Court recommends granting Defendants' motion to dismiss this claim.

### 5.  Violation of the ADA

Plaintiff brings a claim against Defendants CDCR and Phillips for violating the Americans with Disabilities Act.  (FAC ¶¶ 137-144.)  Specifically, Plaintiffs argue that Defendants were deliberately indifferent to decedent's rights under the ADA when they failed to accommodate his disability and deprived him of access to programing, including substance abuse treatment classes and self-help classes, because of his disability.  (FAC ¶¶ 140-141.)  Defendants argue that Plaintiffs fail to allege facts showing that decedent meets the ADA's definition of disability or that he was excluded from CDCR's services because of his disability.  (ECF No. 19,

pp. 26-27.)

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability.  42 U.S.C. § 12132 (1994); Weinrich v. L.A. Cnty. Metro Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997).  The Supreme Court has held that Title II of the ADA applies to state prisons.  Penn. Dept. of Corr. v. Yeskey, 524 U.S. 206, 210 (1998); see also Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001).  Furthermore, "there is no question that defendant CDCR, as a 'department [or] agency . . . of a State' is a 'public entity' for purposes of the ADA, 42 U.S.C. § 12131(1)."  Jones v. Scotland, No. 2:12-cv-00633 TLN, 2015 WL 461633, at *4 (E.D. Cal. Feb. 3, 2015), adopted, 2015 WL 1347412 (E.D. Cal. Mar. 23, 2015).   "Generally, public entities must 'make reasonable modification in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.'"  Pierce v. Cnty. of Orange, 526 F.3d 1190, 1215 (9th Cir. 2008) (quoting 28 C.F.R. § 35.130(b)(7)).

To state a claim under Title II of the ADA, a plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010) (quoting McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004)).

Although "[t]he ADA prohibits discrimination because of disability," it does not provide a remedy for "inadequate treatment for disability."  Simmons, 609 F.3d at 1022 (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison for simply failing to attend to the medical needs of its disabled prisoners . . . .  The ADA does not create a remedy for medical malpractice.")).

Plaintiffs allege that decedent was a mentally disabled individual within the developmental disability program/disability placement plan at SATF, that he had an

11

individualized education plan to account for his cognitive deficits while a student at Antelope Valley, and that he was an Armstrong class member.[3] (FAC ¶¶ 4, 15.) Plaintiffs further contend that decedent's physical and mental health history was well documented and that, through years of regular contact with medical and mental health staff, officials were reasonably apprised that he suffered from both diagnosed and undiagnosed conditions, including substance use disorder and a developmental disability. (Id. at ¶¶ 59-60.) Based on these allegations, Plaintiffs assert that Defendants were obligated to provide appropriate accommodations and ensure reasonable access to programming and services. (Id. at ¶ 139.) Plaintiffs claim Defendants failed to meet these obligations by depriving decedent access to substance abuse treatment classes and self-help classes and by failing to provide curriculum or interdiction protections adapted for inmates with decedent's learning and developmental disabilities. (Id. at ¶ 140.)

As currently pled, Plaintiffs fail to state a claim under Title II of the ADA. Plaintiffs do not allege facts showing that decedent was excluded from participation in, or denied the benefits of, substance abuse treatment classes and self-help classes *because of* his disability. At the hearing, Plaintiffs relied on Armstrong to argue that Defendant CDCR has a pattern and practice of discriminating against individuals with disabilities. However, Plaintiffs' theory appears to rest on the assumption that because systemic deficiencies were identified in Armstrong and decedent later suffered a fatal overdose, Defendants must have failed to comply with their obligations in this case. The Court finds this inference to be a bridge too far.

Additionally, while Plaintiffs reference grievances filed by decedent, the complaint does not identify the substance of the requests or allege facts showing that any failure to accommodate was due to decedent's disability. Plaintiffs must allege facts showing that decedent was denied a specific benefit or accommodation by reason of his disability, and they have not done so here. Although Plaintiffs presented additional facts at the hearing that may support such a claim, the Court declines to consider those facts because they were not alleged in the complaint. Accordingly, the Court recommends granting Defendants' motion to dismiss this claim.

---

[3] Armstrong refers to the case Armstrong v. Wilson, 942 F. Supp. 1252 (N.D. Cal. 1996), aff'd 124 F.3d 1019 (9th Cir. 1997), which required CDCR to provide injunctive relief and comply with the ADA for prisoners with disabilities.

12

**B. State Law Claims**

The Court next analyzes Plaintiffs state law claims. Plaintiff asserts wrongful death against Defendants Macomber, Toche, Broomfield, Mehta, Phillips, Cryer Jr., and Does 1-10; negligence against Defendants CDCR, against Defendants Macomber, Toche, Broomfield, Mehta, Phillips, Cryer Jr., and Does 1-10; and failure to provide medical care against Defendants Does 1-5. (FAC ¶¶ 118-136). Defendants argue that Plaintiffs' state-law claims should be dismissed for failure to comply with the Government Claims Act. (ECF No. 19, pp. 16-20.) Specifically, Defendants assert that Plaintiffs' government claim failed to identify the named Defendants in this suit and incorrectly identified the state prison. (Id.) Plaintiffs respond that the form substantially complied with the requirements, and if there was a deficiency, Defendants failed to provide such notice to Plaintiffs. (ECF No. 20, pp. 13-20.)

Under California's Government Claims Act, "[a] claim relating to a cause of action for death or for injury to person or to personal property . . . shall be presented . . . not later than six months after the accrual of the cause of action." Cal. Gov. Code § 911.2(a). The claim must contain, among others, the date, place, and other circumstances of the occurrence that gave rise to the claim asserted, and the names of the public employees who caused the injury. Cal. Gov. Code § 910(c),(e). If the identification of the public employees who caused the alleged injury is unknown, a plaintiff may "plead[] and prove[]" that their identities were unknown at the time the claim was submitted. Cal. Gov. Code § 950.4.

"[P]resentation of a claim to a public entity and its rejection are prerequisites to maintaining a suit against the entity." Nguyen v. Los Angeles Cnty. Harbor/ UCLA Med. Ctr., 8 Cal. App. 4th 729, 732 (Cal. Ct. App. 1992) (citing Cal. Gov. Code., §§ 905, 945.4). "Failure to comply with the mandatory requirements is fatal to the cause of action." Id. "It is not the purpose of the [California] claims statutes to prevent surprise." City of San Jose v. Super. Ct., 12 Cal. 3d 447, 455 (Cal. 1974). Instead, "the purpose of these statutes is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." Id. "It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding

the claim." Id.

That said, the California Supreme Court has clarified that "a claim need not contain the detail and specificity required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.'" Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal. 4th 441, 446 (Cal. 2004) (quoting Shoemaker v. Myers, 2 Cal. App. 4th 1407, 1436 (Cal. Ct. App. 1992). "As the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions, the claims statue should not be applied to snare the unwary where its purpose has been satisfied." Id. (internal quotations and citations omitted).

Plaintiffs allege in their amended complaint that they have complied with the requirements of the Government Claims Act. (FAC ¶ 15.) However, in their government claims form, Plaintiffs allege that unknown employees of California State Prison-Corcoran were responsible for decedent's death. (ECF No. 19-1.) As noted above, where the identity of a public employee is unknown, a plaintiff may "plead and prove" that the identity was unknown at the time the claim was submitted. See Cal. Gov. Code § 950.4. The complaint, however, does not provide any pleading explaining why Plaintiffs did not know or have reason to know the identities of the named Defendants within the statutory period.

Moreover, the Court observes that the government claims form asserts a claim against California State Prison-Corcoran and names the corresponding warden, Tammy Campbell. (ECF No. 19-1.) That said, the complaint does not acknowledge or plead as to why the incorrect institution and warden are listed. Neither party has directed the Court to any federal or state authority addressing whether listing an incorrect institution and warden satisfies section 910 of the Government Claims Act.

Accordingly, the Court recommends granting Defendants' motion to dismiss Plaintiffs' state law claims for failure to comply with the Government Claims Act. In light of this recommendation, the Court declines to reach the merits of Plaintiffs' state law claims at this time.

///

14

**C. Punitive Damages**

Plaintiff seeks punitive damages against the individual Defendants for the following causes of action: deliberate indifference to serious mental health needs, deprivation of the right to familial relationship with decedent, supervisory liability causing constitutional violations, wrongful death, negligence, and failure to provide medical care. (FAC ¶¶ 94, 108, 112, 117, 123, 130, 136.) Defendants argue that Plaintiffs' allegations are insufficient to support an award of punitive damages and that such damages are not recoverable for Plaintiffs' wrongful death claim. (ECF No. 19, pp. 34-35.) Because the Court recommends dismissal of all claims against all Defendants, it declines to address the availability of punitive damages at this stage. See Smith v. UPS, No. 2:23-cv-09259-MCS-MMA, 2024 WL 660249, at *3 (C.D. Cal. Jan. 5, 2024) ("punitive damages is not a standalone cause of action but rather a remedy for which an underlying claim must be stated."). Additionally, as the parties are aware, such a determination here will be fact specific. See Cal. Civ. Code § 3294.

**D. Leave to Amend**

Defendants argue that leave to amend would be futile. (ECF No. 19, pp. 35-36.) In opposition, Plaintiffs requested leave to amend to present additional factual allegations. (ECF No. 20, p. 22.) At the hearing, Plaintiffs proffered that they are in the process of obtaining records and can cure the identified deficiencies.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing arty by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should . . . be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)). In other words, "[a]bsent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). The decision of whether to grant leave to amend is within the discretion of the district court. Leadsinger, Inc. v. BMG Music Pub., 512

F.3d 522, 532 (9th Cir. 2008).

The Court does not find there is an indication that Plaintiffs have engaged in undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, nor would there be futility of amendment or undue prejudice to Defendants.  That said, the Court will recommend granting leave to amend Plaintiffs' claims with the understanding that Plaintiffs will do so only to the extent they believe in good faith that they can plead additional factual material that could satisfy the legal standards and deficiencies identified herein.  See Fed. R. Civ. P. 15(a)(2); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

**V.**

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion to dismiss (ECF No. 19) be GRANTED with leave to amend.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  **Within fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 13, 2026**                                    _____
                                                            STANLEY A. BOONE
                                                            United States Magistrate Judge

16