# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF WILLIAM TURNER, *by and through successors in interest, William Turner Jr. and Vanessa Bowler*, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | Case No. 1:25-cv-01551-JLT-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS' MOTION TO DISMISS<br><br>(ECF No. 32)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Pending before the Court is a motion to dismiss filed by Defendants California Department of Corrections and Rehabilitation ("CDCR"), Jeffrey Macomber, Diane Toche, Ronald Broomfield, Amar Mehta, M.D., Bryan Phillips, and Clarence Cryer Jr. The Court held a hearing on the matter on September 2, 2026. Counsel Mohammed Aly and Kevin O'Hara appeared on behalf of Plaintiffs, and counsel Ryan Zalesny appeared on behalf of Defendants. Having considered the briefing, the record, and the arguments presented at the hearing, the Court will recommend that Defendants' motion to dismiss be granted.

/ / /

/ / /

/ / /

/ / /

# I.

# BACKGROUND

Plaintiff Estate of William Turner brings this action through successors-in-interest William Turner Jr., a minor, by and through guardian ad litem Nasheicka Patrick, and Vanessa Bowler, a minor, by a through guardian ad litem Charlene Bottom. (ECF No. 30 "SAC", ¶¶ 29-30.) Plaintiffs bring the instant wrongful death and civil rights action against CDCR and several of its employees in relation to the death of William Turner ("Decedent") while in CDCR's custody.

Defendant CDCR is a California State agency responsible for the operation of the California State prison, including the Substance Abuse Treatment Facility and State Prison at Corcoran ("SATF") where Decedent was incarcerated and died. (Id. at ¶ 32.) Defendant Jeff Macomber ("Macomber") was the Secretary of CDCR and was responsible for overseeing CDCR's adult prisons, including SATF, as well as establishing polices and procedures governing inmate safety, medical care and mental health treatment, and ensuring compliance with constitutional requirements and court orders. (Id. at ¶ 33.) Defendant Diana Toche ("Toche") was the Undersecretary of Health Care Services for CDCR and was responsible for overseeing CDCR's health care programs, ensuring that inmates with disabilities received appropriate accommodations and treatment, and implementing court-ordered reforms. (Id. at ¶ 35.) Defendant Ronald Broomfield ("Broomfield") was the Director of CDCR's Division of Adult Institutions and was responsible for overseeing the operation of CDCR's adult prisons, including SATF, ensuring that institutions complied with CDCR polices, and implementing corrective actions ordered by federal courts. (Id. at ¶ 37.) Defendant Amar Mehta was the Deputy Director of CDCR's Statewide Mental Health Program and was responsible for establishing mental health treatment protocols at CDCR institutions, ensuring adequate mental health staffing, overseeing suicide prevention and risk assessment programs, and ensuring that inmates with developmental disabilities received appropriate care. (Id. at ¶ 39.) Defendant Bryan Phillips ("Phillips") was the Warden for SATF, who was responsible for the overall safety and security of the inmates at SATF, implementing and enforcing compliance with protocols, policies, and court orders, and

supervising all staff at SATF. (Id. at ¶ 41.) Defendant Clarence Cryer Jr. ("Cryer Jr.") was the Chief Executive Officer of SATF and was responsible for health care services at the facility, including ensuring that inmates received adequate medical and mental health care, overseeing substance abuse treatment programs, ensuring that inmates with developmental disabilities received appropriate accommodations, and responding appropriately to medical emergencies. (Id. at ¶ 43.) Defendant Doe 1 was a Lieutenant at CDCR responsible for overseeing custody staff, ensuring compliance with welfare check protocols, and reviewing guard system data. (Id. at ¶ 45(a).) Defendant Doe 2 was a Sergeant at CDCR who was responsible for directly supervising correctional officers conducting welfare checks and reviewing housing unit logbooks. (Id. at ¶ 45(b).) Defendant Doe 3 was a Correctional Officer at CDCR responsible for conducting welfare checks at required intervals at Decedent's housing unit at the time of his death. (Id. at ¶ 45(c).) Defendant Doe 4 was a Psychiatric Technician at CDCR who was responsible for mental health observation and care of inmates, including Decedent. (Id. at ¶ 45(d).) Defendant Doe 5 was a Licensed Vocational Nurse at CDCR who was responsible for providing medical care and responding to medical emergencies. (Id. at ¶ 45(e).) Defendants Does 6 through 10 are additional employees at CDCR, including custody, medical, and supervisory personnel. (Id. at ¶ 47.)

Decedent was intellectually disabled. (Id. at ¶¶ 49, 51.) In March 2015, while incarcerated at Salinas Valley State Prison, Decedent was evaluated and designated as a participant in CDCR's Developmental Disability Program ("DDP"). (Id. at ¶ 50.) As part of that designation, Decedent was determined to require accommodation for communication and program participation. (Id. at ¶¶ 50, 52.) Decedent's DDP status was documented in his prison records. (Id. at ¶ 53.) Decedent was also enrolled in CDCR's Mental Health Services Delivery System, where he was diagnosed with an adjustment disorder with mixed anxiety and depressed mood, a personality disorder with antisocial features, and cannabis dependence. (Id. at ¶ 54.)

Decedent also experienced prior medical incidents while incarcerated. On December 22, 2022, Decedent experienced a "drug related episode" that required ambulance transport to an outside medical facility. (Id. at ¶ 57(c).) On August 5, 2023, Decedent exhibited seizure-like

symptoms and somnolence, prompting the administration of Narcan. (Id. at ¶ 57(c).) In August 2023, Decedent also tested positive for cannabis. (Id. at ¶ 57(b).)

On November 13 or 14, 2023, Decedent was discovered unresponsive in Facility B at SATF with signs of a cocaine overdose. (Id. at ¶¶ 59, 61, 85, 87.) Staff initiated emergency response protocols, including repeatedly administering Narcan. (Id. at ¶¶ 85, 88.) Decedent was pronounced dead on November 14, 2023, at 12:24 a.m. (Id. at ¶ 84.) The coroner determined the cause of death was from an accidental overdose caused by ingestion of a toxic dose of cocaine. (Id. at ¶ 86.) The coroner could not determine how much time had elapsed between Decedent's overdose and his death. (Id. at ¶ 87.)

Previously, this Court issued findings and recommendations recommending that Defendants' motion to dismiss be granted. (ECF No. 28.) The District Judge adopted the undersigned's recommendations and granted Plaintiffs leave to file a second amended complaint. (ECF No. 29.) On July 10, 2026, Plaintiff filed their second amended complaint, bringing eight causes of action: 1) Deliberate Indifference to Serious Medical Needs, brought through 42 U.S.C. § 1983; 2) Failure to Protect, brought through 42 U.S.C. § 1983; 3) Deprivation of Familial Relations, brought through 42 U.S.C. § 1983; 4) Supervisory Liability, brought through 42 U.S.C. § 1983; 5) Wrongful Death, Cal. Code Civ. Proc § 377.60; 6) Negligence; 7) Failure to Provide Medical Care; and 8) Violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. (SAC at pp. 31-40.) On July 24, 2026, Defendants filed the instant motion to dismiss, and Plaintiffs filed their opposition on August 7, 2026. (ECF Nos. 32, 36.) The assigned District Judge referred the motion to the undersigned for the preparation of findings and recommendations (ECF No. 33), and the Court held a hearing on September 2, 2026. (ECF No. 38.)

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Navarro

v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The pleading standard under Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Id. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

In deciding whether a complaint states a claim, the Ninth Circuit has discussed that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Id. "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988)).

## III.

## DISCUSSION

### A. Claims Brought Through 42 U.S.C. § 1983

#### 1. Deliberate Indifference to Serious Medical Needs

Plaintiffs claim that Defendants Macomber, Toche, Broomfield, Mehta, Phillips, Cryer Jr., and Does 1-10 were deliberately indifferent to serious medical needs in violation of the Eight Amendment. (SAC ¶¶ 101-107.) Defendants contend that Plaintiffs have not alleged sufficient

facts to establish Defendants' conscious disregard of a substantial risk of serious harm to Decedent. (ECF No. 32, pp. 21-25.) Plaintiffs respond that Defendants "had to have known" about Decedent's prior medical emergencies and that they are entitled to the inference that administrators at CDCR knew of the medical incidents when reported. (ECF No. 36, pp. 6-7.) Plaintiffs further argue that "had Defendants' staff conducted meaningful welfare checks at required intervals, they would have discovered [Decedent] in medical distress during the treatable phase of his cocaine overdose." (Id. at p. 7.) Even construing the allegations in the complaint in the light most favorable to Plaintiffs, the Court nonetheless agrees with Defendants.

While the Eighth Amendment of the United States Constitution entitles an inmate to medical care, the Eighth Amendment is violated only when a prison official subjectively acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Under the subjective deliberate indifference standard, "a prison official will be liable for disregarding an inmate's serious medical needs only if he was both 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and actually 'dr[e]w the inference.'" Sandoval v. Cnty. of San Diego, 985 F.3d 657, 667-68 (9th Cir. 2021) (quoting Peralta, 744 F.3d at 1086). In contrast, "a prison official who 'should have been aware' of a medically related risk to an inmate, but in fact was not, 'has not violated the Eighth Amendment, no matter how severe the risk.'" Id. at 668 (quoting Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002)), overruled on other grounds, Castro v. Cnty. of Los Angeles, 833 F.3d 1060 (9th Cir 2016)). Mere negligence is insufficient for Eighth Amendment liability. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Here, although Plaintiffs contend that Decedent's death could have been avoided by timely welfare checks and timely medical intervention, the complaint does not plausibly allege that any Defendant actually inferred that Decedent faced a substantial risk of overdose and consciously disregarded that risk. Rather, Plaintiffs argue that Decedent's records placed Defendants on notice of his risk of drug-related harm. (Compl. ¶ 57.) Plaintiffs, however, do not

allege facts showing that Defendants Macomber, Toche, Broomfield, Mehta, or Does 1-10 reviewed Decedent's records or otherwise had actual knowledge of his prior medical incidents. The standard requires actual, subjective awareness of the risk; it is not enough that an official objectively should have recognized the danger but failed to do so. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Plaintiffs further allege that Defendants Phillips and Cryer Jr. knew of Decedent's DDP status, substance abuse history, prior drug related incidents, gaps in welfare checks, and general presence of contraband at SATF. (Compl. ¶ 77.) Even accepting those allegations as true, however, the complaint does not allege facts demonstrating that either Defendant actually inferred that Decedent faced a substantial risk of overdose. The complaint does not allege that any Defendant knew Decedent had access to or had ingested cocaine, observed signs that Decedent was overdosing, or otherwise received information indicating that Decedent faced a substantial risk of overdose.

Moreover, the complaint does not contain specific factual allegations identifying what each individual Defendant did, or how their failure to act caused harm to Decedent. Plaintiffs essentially lump all the Defendants together, attempting to hold each of them liable without delineating a factual basis for each individual defendant's potential liability. The Court cannot infer the subjective intent of each individual Defendant from allegations directed at Defendants collectively. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Plaintiff's reliance on the orders issued in Coleman[1] and Armstrong[2] are similarly unavailing. While such orders may reflect broader systemic concerns, generalized allegations of institutional deficiencies do not establish that any Defendant had the requisite subjective

---

[1] "Coleman" refers to the class action arising from Coleman v. Newsom, No. 2:90-cv-00520-TLN-SCR, ECF No. 1, Complaint (E.D. Cal. Apr. 23, 1990), in which the court found that CDCR provided constitutionally inadequate mental health care to inmates. (SAC ¶ 64.) A court-appointed Special Master monitors CDCR's compliance with remedial orders, and the court has repeatedly found ongoing constitutional violations and ordered CDCR to take corrective measures. (Id. at ¶¶ 64, 67.)

[2] "Armstrong" refers to the class action stemming from Armstrong v. Newsom, No. 4:94-cv-02307-CW, ECF No. 1, Complaint (N.D. Cal. May 29, 1994), which involves claims that CDCR failed to provide constitutionally adequate accommodations for inmates with disabilities under the ADA. (SAC ¶ 70.) In 2020-2021, the court expert criticized SATF's treatment of disabled inmates, and on March 11, 2021, the court ordered additional remedial measures at multiple CDCR institutions including SATF. (Id. at ¶¶ 71, 73-74.)

awareness of a substantial risk of harm to Decedent in this case. See, e.g., Est. of Olivo v. Cal. Dep't of Corr. & Rehab., No. 24-cv-896 W (MMP), 2025 WL 3510911, at *5 (S.D. Cal. July 9, 2025) ("[T]o show deliberate indifference, Plaintiffs must be able to point to specific issues Coleman identified and tie those similarities to the facts of their case"); see also Roberts v. Cate, No. 2:08-cv-2624-JAM-KLN-P, 2013 WL 268709, at *12 (E.D. Cal. Jan. 22, 2013) (finding that a defendant's knowledge of deficiencies addressed in Coleman was "too generalized to impute knowledge" of specific deficiencies at a state prison).

In sum, the relevant inquiry is not whether Defendants should have known of a risk to Decedent, but whether each Defendant actually drew the inference and acted, or failed to act, despite knowing of a substantial risk of serious harm. Accordingly, Plaintiffs have failed to state a claim for deliberate indifference, and the Court recommends granting Defendants' motion to dismiss this claim.

**2. Failure to Protect From Harm**

Plaintiffs claim that Defendants Macomber, Toche, Broomfield, Phillips, Cryer Jr., and Does 1-10 failed to protect Decedent from serious harm in violation of the Eight Amendment. (SAC ¶¶ 108-113.) To establish a failure to protect claim under the Eight Amendment, a plaintiff must allege that prison officials acted with deliberate indifference to the threat of serious harm. Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013). Because Plaintiffs' failure to protect claim is based on the same alleged conduct and is governed by the same deliberate indifference standard analyzed above, the Court does not repeat that analysis here. Again, for the reasons set forth above, the Court recommends that Defendants' motion to dismiss this claim be granted.

**3. Deprivation of Familial Relations with Decedent**

Plaintiffs claim that Defendants Macomber, Toche, Broomfield, Phillips, Cryer Jr., and Does 1-10 deprived them of their Fourteenth Amendment liberty interests in their familial relationship with their father through deliberate indifference to Decedent's medical needs and failure to protect. (SAC ¶¶ 114-119.)

"Parents and children may assert Fourteenth Amendment substantive due process claims

if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1075 (9th Cir. 2013). "[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation." Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008). "Conduct which was not intentional, but rather deliberately indifferent, may rise to the conscience-shocking level in some instances" that would state a claim for loss of familiar relations. See Muniz v. Pfeiffer, No. 1:19-cv-00233-JLT-CDB (PC), 2023 WL 184481, at *9 (E.D. Cal. Jan. 13, 2023) (citing Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)), adopted, 2023 WL 2413822 (E.D. Cal. Mar. 8, 2023).

The Court has previously found that Plaintiffs failed to state claims for deliberate indifference to serious medical needs and for failure to protect. Because Plaintiffs' Fourteenth Amendment loss of familial relations is premised on a finding of deliberate indifference to those claims, the Court again recommends granting Defendants' motion to dismiss this claim.

**4. Supervisory Liability**

Plaintiffs claim that Defendants Macomber, Toche, Broomfield, Mehta, Phillips, and Cryer Jr. personally contributed to the conditions that led to Decedent's death by implementing or maintaining policies that deprived Decedent of his constitutional rights and were a moving force behind his death. (SAC ¶¶ 120-124.) Defendants argue that Plaintiffs fail to allege that they personally participated in Decedent's overdose or were aware of any subordinate's unlawful conduct, and that Plaintiffs do not identify how any alleged failure to train, supervise, or discipline any subordinate caused Decedent's overdose. (ECF No. 32, pp. 26-28.) In response, Plaintiffs provide a brief argument that "Defendants suggest 'no obvious alternative explanation' for their failure to act after permitting [Decedent] to decompensate and die from his untreated mental health after multiple reported issues at the prison." (ECF No. 36, pp. 9-10.)

"Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful

conduct and the constitutional violation." Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (quoting Hansen, 885 F.2d at 646). Allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." Felarca v. Birgeneau, 891 F.3d 809, 820 (9th Cir. 2018) (quoting Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011)). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Starr, 652 F.3d at 1208 (quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998)). Additionally, supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy 'itself is a repudiation of the constitutional rights' and is 'the moving force of the constitutional violation.'" Crowley, 734 F.3d at 977 (quoting Hansen, 885 F.2d at 646).

Here, Plaintiffs' allegations are insufficient to state a claim for supervisory liability under Section 1983. Plaintiffs allege that Defendant Macomber received Coleman and Armstrong reports and failed to allocate resources or direct corrective action at SATF; Defendant Toche was responsible for healthcare programs, aware of deficiencies in care for developmentally disabled inmates, and failed to implement corrective measures; Defendant Broomfield was responsible for adult institutions, aware of welfare check failures, and failed to issue corrective directives; Defendant Mehta was responsible for mental health protocols, aware that inmates with developmental disabilities were not receiving adequate care, and failed to implement adapted protocols; Defendant Phillips was Warden with direct supervisory authority, aware of welfare check failures through Guard 1 data, and failed to ensure compliance; and Defendant Cryer Jr. was CEO responsible for healthcare, aware no adapted programming existed for DDP inmates,

and failed to develop or implement programming. (SAC ¶ 122(a)-(f).) However, these allegations do not cure the deficiencies previously identified by the Court. Although Plaintiffs identify each Defendant's general responsibilities and, in some instances, allege that Defendants were aware of systemic deficiencies, Plaintiffs do not allege facts connecting any Defendant's conduct to the alleged constitutional deprivation. Specifically, Plaintiffs do not allege facts showing how any Defendant's particular knowledge or conduct caused or contributed to Decedent's failure to receive adequate care or ultimately resulted in his death. Moreover, the newly added allegations remain generalized and fail to identify which policy or polices implemented or maintained by Defendant amounted to a repudiation of Decedent's constitutional rights or was the moving force behind his death. Conclusory assertions that policies or training were inadequate, absent factual allegations identifying a specific deficiency and its causal connection to the alleged harm, are insufficient to establish supervisor liability under section 1983.

Accordingly, Plaintiffs have failed to state a claim for supervisory liability, and the Court recommends granting Defendants' motion to dismiss this claim.

**5. Violation of the ADA**

Plaintiff brings a claim against Defendant CDCR for violating the ADA. (SAC ¶¶ 141-150.) Specifically, Plaintiffs allege that CDCR denied Decedent benefits and accommodations by reason of his disability through failing to provide programming adapted for his cognitive limitations and enhanced supervision as a DDP inmate. (Id. at ¶¶ 56, 62-63, 146-148.) As a result, Plaintiffs allege that Decedent was denied access to substance abuse treatment that could have addressed his addiction and prevented his fatal overdose. (Id. at ¶ 149.) Defendant CDCR argues that Plaintiffs fail to state an ADA claim because the complaint does not allege that programs were unavailable to Decedent; that Decedent was excluded from, or denied meaningful access to, CDCR's services because of his disability; and critically that because the complaint seeks only compensatory damages, Plaintiff must allege CDCR's deliberate indifference but has failed to do so. (ECF No. 32, pp. 28-31.) In response, Plaintiffs argue that the complaint alleges that CDCR effectively excluded Decedent from substance abuse treatment by failing to adapt its

programming to his known intellectual disability and individualized learning needs, thereby allowing nondisabled prisoners to participate while Decedent could not. (ECF No. 36, pp. 10-11.)

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C. § 12132 (1994). The Supreme Court has held that Title II of the ADA applies to state prisons. Penn. Dept. of Corr. v. Yeskey, 524 U.S. 206, 210 (1998); see also Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001). To state a claim under Title II of the ADA, a plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010) (quoting McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004)). In order to recover monetary damages, a plaintiff must allege intentional discrimination under the "deliberate indifference" standard. Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon . . . the likelihood." Id. at 1139. This standard is not met "where a duty to act may simply have been overlooked," but rather "a failure to act must be a result of conduct that is more than negligent[.]" Id.

Plaintiffs allege that Decedent was a "qualified individual with a disability" who had a documented intellectual disability that substantially limited major life activities, including learning, reading, concentrating, thinking, and communicating. (SAC ¶¶ 49, 51, 144.) Plaintiffs further contend that CDCR recognized Decedent's disability through his DDP designation at the DD1 level. (Id. at ¶¶ 50, 52, 53, 144.) Plaintiffs allege that CDCR denied Decedent specific benefits and accommodations by reason of his disability by failing to provide substance abuse treatment programming adapted to his cognitive limitations; failing to provide mental health treatment, including treatment plans and educational materials in formats he could comprehend;

and failing to provide Decedent with the enhanced supervision required for DDP inmates. (Id. at 146.) Plaintiffs further allege that while non-disabled inmates could participate in CDCR's standard programming, Decedent could not do so because of his intellectual disability. (Id. at 148.)

As currently pled, Plaintiffs fail to state a claim under the ADA. Plaintiffs do not allege facts showing that Decedent was excluded from participation in, or denied the benefits of, any services or programs offered by the prison because of his disability. At most, Plaintiffs allege that the treatment Decedent's received for his disability was inadequate because he was unable to participate; however, such allegations do not, without more, state a claim under the ADA. See Simmons, 609 F.3d at 1022 (holding that although the ADA prohibits discrimination because of disability, it does not provide a remedy for inadequate treatment for disability.). In any event, because Plaintiffs seek compensatory damages under the ADA, Plaintiffs must allege facts demonstrating that CDCR was deliberately indifferent to Decedent's need for an accommodation. Duvall, 260 F.3d at 1138. Plaintiffs have not alleged facts sufficient to satisfy that standard. Accordingly, the Court recommends granting Defendants' motion to dismiss this claim.

**B. State Law Claims**

The Court next analyzes Plaintiffs state law claims. Plaintiffs assert wrongful death against Defendants CDCR, Macomber, Toche, Broomfield, Mehta, Phillips, Cryer Jr., and Does 1-10; negligence against Defendants CDCR, Macomber, Toche, Broomfield, Mehta, Phillips, Cryer Jr., and Does 1-10; and failure to provide medical care against Defendants Does 1-10. (SAC ¶¶ 125-140). Defendants argue that Plaintiffs' state-law claims should be dismissed for failure to comply with the Government Claims Act. (ECF No. 32, pp. 31-36.) Specifically, Defendants assert that Plaintiffs failed to comply with the presentation requirement, even substantially, and that, even if Plaintiffs did substantially comply, the individual defendants are immune from the state-law claims and CDCR is immune from Plaintiffs' negligence claim. (Id.) Plaintiffs respond that they have complied, if not substantially complied, and if there was a deficiency, Defendants failed to provide such notice to Plaintiffs. (ECF No. 36, pp. 11-16.)

Plaintiffs further argue that the individual defendants prematurely assert immunity, and that CDCR has no immunity. (Id. at p. 16.)

Under California's Government Claims Act, "[a] claim relating to a cause of action for death or for injury to person or to personal property . . . shall be presented . . . not later than six months after the accrual of the cause of action." Cal. Gov. Code § 911.2(a). The claim must contain, among others, the date, place, and other circumstances of the occurrence that gave rise to the claim asserted, and the names of the public employees who caused the injury. Cal. Gov. Code § 910(c),(e). If the identification of the public employees who caused the alleged injury is unknown, a plaintiff may "plead[] and prove[]" that their identities were unknown at the time the claim was submitted. Cal. Gov. Code § 950.4.

"[P]resentation of a claim to a public entity and its rejection are prerequisites to maintaining a suit against the entity." Nguyen v. Los Angeles Cnty. Harbor/ UCLA Med. Ctr., 8 Cal. App. 4th 729, 732 (Cal. Ct. App. 1992) (citing Cal. Gov. Code., §§ 905, 945.4). "Failure to comply with the mandatory requirements is fatal to the cause of action." Id. "It is not the purpose of the [California] claims statutes to prevent surprise." City of San Jose v. Super. Ct., 12 Cal. 3d 447, 455 (Cal. 1974). Instead, "the purpose of these statutes is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." Id. "It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim." Id.

That said, the California Supreme Court has clarified that "a claim need not contain the detail and specificity required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.'" Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal. 4th 441, 446 (Cal. 2004) (quoting Shoemaker v. Myers, 2 Cal. App. 4th 1407, 1436 (Cal. Ct. App. 1992)). "As the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions, the claims statue should not be applied to snare the unwary where its purpose has been satisfied." Id. (internal quotations and citations omitted).

Plaintiffs allege that they complied with the presentation requirements of the Government Claims Act. (SAC ¶ 10.) On May 14, 2024, Plaintiffs timely presented their claims to the California Department of General Services, exactly six months after their claims accrued, as required by Government Code Section 911.2. (Id. at ¶ 11.) Plaintiffs allege that the claims contained the information required by Government Code Section 910, and that the Government Claims Program did not respond to the claims within the 45-day period as specified in Government Code Section 912.4. (Id. at ¶¶ 13-14.) Plaintiffs acknowledge that their form identified California Substance Abuse Treatment Facility and State Prison, an institution adjacent to but separate and distinct from the institution where the events at issue occurred, and named the corresponding warden, Tammy Campbell. (Id. at ¶ 15.) Plaintiffs contend that this error resulted from the "confusing similarity" between the names of the two facilities and their shared location in Corcoran, California. (Id. at ¶ 16.) Plaintiffs further allege that, at the time they presented their claims, they did not know the identities of the individuals employed during the events at issue and that their counsel was working with limited publicly available information because CDCR had not yet produced Decedent's records. (Id. at ¶ 17.) Even so, Plaintiffs argue that they substantially complied with the presentation requirements because the claims were directed to CDCR, the correct public entity; provided sufficient information to permit an investigation; fulfilled the purposes of the Government Claims Act; and caused no prejudice to CDCR because CDCR had access to the relevant records through its centralized systems. (Id. at ¶ 21.) Plaintiffs further contend that, regardless of any defect in the presentation requirement, CDCR waived its right to assert such defects by failing to notify Plaintiffs of any insufficiency within the statutory period. (Id. at ¶¶ 22-27.)

To begin, the Court is not persuaded that Plaintiffs have substantially complied with the Government Claims Act merely because CDCR *could have* conducted an investigation through its own records. California case law makes clear that the claim presentation requirement must be satisfied even where the public entity has actual knowledge of the circumstances surrounding the claim. See e.g., J.J. v. Cnty. of San Diego, 223 Cal. App. 4th 1214, 1219 (2014). Thus, the fact that CDCR possessed records concerning Decedent's incarceration does not itself establish

substantial compliance.

Moreover, although Plaintiffs rely on cases finding substantial compliance despite an incorrect location on a claim, the Court does not find those circumstances analogous here. For example, in Rowan v. San Francisco, the court found substantial compliance where the plaintiff provided an incorrect street address for the location of the accident, but the claim otherwise contained sufficient information to provide the public entity with notice of the occurrence. 244 Cal. App. 2d 310, 312-13 (1966). Here, by contrast, Plaintiffs' claim contains multiple discrepancies and omissions, including identifying an incorrect institution and warden, and the individual defendants named in this action. These deficiencies are significant because they concern the institution at which the events allegedly occurred and the employees whose conduct forms the basis of Plaintiffs' claims. Considered together, the Court finds that these deficiencies distinguish this case from Rowan.

With respect to the omission of the individual defendants' names, Plaintiffs allege that they did not know the identities of the individuals involved at the time the claim was presented because counsel had limited publicly available information and CDCR had not yet produced Decedent's records. Plaintiffs, however, do not allege what efforts they undertook to identify the individuals responsible for the alleged conduct or allege the circumstances preventing them from identifying the employees through the publicly available information before the claim presentation deadline. As the Court previously explained, Government Code section 950.4 permits a plaintiff to pursue a claim against a public employee whose identity was unknown during the claim presentation period, provided the plaintiff pleads and proves that the identity was unknown at the time the claim was submitted. See Cal. Gov. Code § 950.4; see also Crawley v. California Dep't of Corr. & Rehab., No. 1:25-cv-00388-JLT-SAB, 2025 WL 2614663, at *7 (E.D. Cal. Sept. 10, 2025), adopted in part, rejected in part on other grounds, No. 1:25-cv-00388, 2025 WL 2915891 (E.D. Cal. Oct. 14, 2025). Accordingly, the Court finds that Plaintiffs have not alleged sufficient facts to establish they did not know the identities of the named defendants under section 950.4.

Lastly, the Court addresses whether CDCR waived its objections to the government claim

by failing to notify Plaintiffs of any deficiencies. Although a public entity may waive objections based on defects or omissions in a claim by failing to provide timely notice of those deficiencies, such waiver does not necessarily extend to a defense based on a variance between the factual basis presented in the government claim and that later alleged in the complaint. See Donohue v. State of California, 178 Cal. App. 3d 795, 805 (1986) (finding no waiver where the insufficiency of plaintiff's claim lay in its failure to set forth the factual basis for recovery alleged in the complaint, and that the defendant could not have discovered the defect until the plaintiff filed his complaint); Ramachandran v. City of Los Altos, 359 F. Supp. 3d 801, 818 (N.D. Cal. 2019) (finding no waiver where plaintiff's government claim omitted facts supporting the plaintiff's later alleged emotional distress claim).

Here, Defendants argue that the factual basis for the claims asserted in the complaint differs from that presented in the government claim. (ECF No. 32, pp. 33-34; ECF No. 37, pp. 9-10.) In particular, the government claim did not identify the individual defendants named in this suit or premise liability of how their respective leadership positions and responsibilities contributed to Decedent's alleged harm. (Id.; see also ECF No. 32-1, Ryan Zalesny Decl., Ex. 2, p. 2.) Although the Court recognizes some overlap between the government claim and the allegations in the complaint, the Court finds Defendants' position persuasive under the circumstances presented. Thus, the Court finds Defendant CDCR did not waive its defense based on the variance between the government claim and the allegations in the complaint.

Accordingly, the Court recommends granting Defendants' motion to dismiss Plaintiffs' state law claims for failure to comply with the Government Claims Act. In light of this recommendation, the Court declines to reach the merits of Plaintiffs' state law claims at this time.

**C. Punitive Damages**

Plaintiffs seek punitive damages against the individual Defendants for the following causes of action: deliberate indifference to serious medical needs, failure to protect, deprivation of familial relations, and supervisory liability. (SAC ¶¶ 107, 113, 119, 124.) Because the Court recommends dismissal of all claims against all Defendants, it declines to address the availability

of punitive damages at this stage. See Smith v. UPS, No. 2:23-cv-09259-MCS-MMA, 2024 WL 660249, at *3 (C.D. Cal. Jan. 5, 2024) ("punitive damages is not a standalone cause of action but rather a remedy for which an underlying claim must be stated."). Additionally, as the parties are aware, such a determination here will be fact specific. See Cal. Civ. Code § 3294.

**D. Further Leave to Amend**

Defendants argue that leave to amend would be futile because Plaintiffs have already had two prior opportunities to cure the deficiencies in their claims. (ECF No. 32, pp. 36-37.) In opposition, Plaintiffs contend that they can allege additional facts regarding Defendants' knowledge of, and deliberate indifference to, Decedent's health condition. (ECF No. 36, pp. 17-18.)

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). However, a court may deny leave to amend based on undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962). Where a plaintiff has already amended the complaint, "[t]he district court's discretion to deny leave to amend is particularly broad." Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990) (citation omitted). Ultimately, the decision of whether to grant leave to amend is within the discretion of the district court. Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

Here, the Court will recommend that Plaintiffs' claims against Defendants be dismissed without further leave to amend. Plaintiffs were previously advised of the deficiencies identified in their first amended complaint and were granted leave to amend to plead additional facts sufficient to satisfy the applicable legal standards. (See ECF Nos. 28, 29.) However, the Court finds that Plaintiffs have failed to cure the deficiencies in their second amended complaint despite being afforded an opportunity to do so. Accordingly, the Court finds that further leave to amend would be futile.

/ / /

/ / /

## V.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion to dismiss (ECF No. 32) be GRANTED without further leave to amend.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Absent leave of the Court, any objections shall not exceed **fifteen (15) pages** and, absent good cause and leave of the Court, shall be limited to arguments previously presented by the parties or ruled upon by the Court, and shall not cite any new authority which could have been cited at the time of the filing.

The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 12, 2026**

STANLEY A. BOONE
United States Magistrate Judge